# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVIS ANTHONY HILL, | ) | Case No. 5:25-CV-00646-BMB |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| TARYN L. HEATH, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Davis Anthony Hill ("Mr. Hill"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Hill is serving a sentence of 16 to 21 and a half years in prison after entering a plea of no contest to charges of drug trafficking, drug possession, and having weapons while under disability.

Mr. Hill asserts three grounds for relief. Respondent ("Warden") filed an answer/return of writ on June 18, 2025. (ECF No. 7). Mr. Hill filed a traverse on August 16, 2025. (ECF No. 10). This matter was referred to me on April 3, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Hill's petition. (*See* ECF non-document entry dated April 3, 2025). For the reasons set forth below, I recommend that Mr. Hill's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Hill a certificate of appealability. Finally, I recommend that the Court substitute Warden George A.

1

Frederick for Judge Taryn L. Heath as the respondent in this proceeding.[1]

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Fifth Appellate District summarized the facts as follows:

{¶2} In 2019, a multi-agency investigation was launched following a tip from an FBI wire stating Appellant had taken over for a drug trafficker who was in prison. Agent Kelly Hmiel of the Stark County Sheriff's Department Metro Narcotics Unit Task Force was involved in the investigation.

{¶3} Over a three-month period, Agent Hmiel utilized a confidential informant (hereinafter "C.S.") to make controlled drug buys from Appellant. The officer monitored Appellant's routes taken and the houses he visited, and determined the drug-related history of people who lived in the homes Appellant's visited. She witnessed an unknown female enter and leave Appellant's residence, and subsequently make a hand-to-hand transaction with another person.

{¶4} Officers watched Appellant's residence in Canton, Ohio, during the controlled drug buys. After a call or text from C.S. was sent to Appellant, officers saw Appellant leave the residence and drive to the site of the controlled buy. Appellant used the same vehicle every time, and never left the vehicle. During the controlled buys, C.S. wore a wire and used buy-money supplied by police to purchase contraband from Appellant. The recovered contraband was sent to the Stark County Crime Lab, where the drugs recovered were found to be either heroin, fentanyl, or carfentanil.

{¶5} On May 29, 2019, officers sought a search warrant to install a GPS tracking device on Appellant's vehicle. The warrant (hereinafter "tracker warrant") was issued, and a tracking device was placed on the vehicle which alerted Agent Hmiel every time

---

[1] Mr. Hill named Judge Taryn L. Heath as the respondent in his petition. (ECF No. 1). In the return of writ, respondent states that Mr. Hill is currently incarcerated at Marion Correctional Institution, and that Warden George A. Frederick is the warden of that institution, and thus the proper respondent in this proceeding. (ECF No. 7, PageID # 31, n.1); *see also* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A773422 (last accessed Jan. 2, 2026). I therefore recommend that the Court substitute Warden George A. Frederick for Judge Taryn L. Heath as the respondent in this proceeding.

Appellant went mobile. Two or three more controlled buys occurred during the time the tracker was on the vehicle. In late June, 2019, officers followed Appellant's vehicle to a well-known drug house in Akron, and followed the vehicle back to Appellant's residence. Agent Hmiel was able to identify Appellant as the person in the vehicle.

{¶6} Officers obtained a search warrant for Appellant's residence on July 1, 2019. The next day, officers set up a vehicle perimeter around the residence. When Appellant returned to the residence, officers told him they had a warrant to search the residence. Appellant was searched. On Appellant's person, officers found multiple cell phones, a small bag of marijuana, and over a thousand dollars in cash. Appellant was placed in the back of a police cruiser while officers swept the house for safety reasons.

{¶7} Agent Hmiel then took Appellant inside the residence, provided him with the search warrants, and had him sit at the kitchen table. Agent Jarrod Blanc was seated at the table across from Appellant. The officer was going through paperwork, as he was responsible to inventory the items found in the house. After two or three minutes, Appellant asked the agents if they were looking for "dog food," which is slang for heroin, and told the officers the "dog food" was in the top of the closet. Appellant also mentioned there was a rifle under the bed.

(ECF No. 7-1, Exhibit 36); *State v. Hill*, No. 2023CA00029, 2023 WL 8439317, 2023-

Ohio-4381 (5th Dist. Dec. 4, 2023).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Guilty Plea</u>

On August 26, 2019, Mr. Hill was indicted in the Stark County Court of Common

Pleas on: (1) one first-degree felony count of trafficking in heroin in violation of O.R.C. §

2925.03(A)(2)(C)(6)(g); (2) one first-degree felony count of heroin possession in violation of

O.R.C. § 2925.11(A)(C)(6)(f); (3) one first-degree felony count of trafficking in a fentanyl-

related compound in violation of O.R.C. § 2925.03(A)(2)(C)(9)(h); (4) one first-degree felony

count of possession of a fentanyl-related compound in violation of O.R.C. §

2925.11(A)(C)(11)(g); (5) two third-degree felony counts of heaving weapons while under

disability in violation of O.R.C. § 2923.13(A)(2); and (6) one fifth-degree felony count of

aggravated drug possession in violation of O.R.C. § 2925.11(A)(C)(1)(a). (ECF No. 7-1,

Exhibit 1). The trafficking, heroin possession, and fentanyl possession counts also carried

major drug offender specifications. *Id*. On August 30, 2019, Mr. Hill pled not guilty to all charges. (ECF No. 7-1, Exhibit 2).

On January 3, 2020, Mr. Hill filed a motion to suppress or exclude any evidence obtained from the search of his residence. (ECF No. 7-1, Exhibit 3). After the trial court held a suppression hearing, Mr. Hill filed a post-hearing brief, in which he also argued that the court should exclude the statements he made to agents during the search because they were obtained in violation of his Fifth Amendment rights. (ECF No. 7-1, Exhibit 4). On April 22, 2020, the court denied the motion to suppress. (ECF No. 7-1, Exhibit 5).

On July 21, 2020, Mr. Hill filed a second suppression motion, seeking to exclude any information obtained as a result of the installation of the vehicle tracking device. (ECF No. 7-1, Exhibit 6). On July 27, 2020, Mr. Hill filed a supplemental motion to suppress, in which he also asked the trial court to reconsider its prior order denying his motion to suppress evidence obtained from the search of his residence. (ECF No. 7-1, Exhibit 8). On July 27, 2020, the trial court denied both motions in an oral ruling. (ECF No. 8-2, 46:12-22; 48:21-25).

On August 5, 2020, Mr. Hill withdrew his plea of not guilty and pled guilty to all charges. (ECF No. 7-1, Exhibit 9). On the same day, the trial court sentenced Mr. Hill to an aggregate term of 16 to 21 and a half years in prison. *Id*.

**B.  <u>Direct Appeal</u>**

On September 10, 2020, Mr. Hill, through counsel, timely filed a notice of appeal to the Fifth Appellate District. (ECF No. 7-1, Exhibit 11). In his appellate brief, Mr. Hill raised the following assignments of error:

> 1.  The trial court abused its discretion when it did not allow appellant to enter a plea of no contest.

4

2. The trial court erred when it imposed a vindictive sentence upon appellant.

(ECF No. 7-1, Exhibit 12).

On June 9, 2021, the Fifth Appellate District affirmed. (ECF No. 7-1, Exhibit 14). Mr. Hill, through counsel, timely appealed to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 16). In his memorandum in support of jurisdiction, Mr. Hill raised the following propositions of law:

1. If the Trial Court abused its discretion in not allowing a Defendant to enter a plea of no contest, then reversal is appropriate. Here, where the Trial Court refused to allow Defendant to enter a plea of no contest, arbitrarily, reversal is appropriate.

2. If the Trial Court imposes a vindictive sentences [*sic*] upon a Defendant for exercising their constitutional rights, reversal and re-sentencing is appropriate. Here, where the Court stated upon the record their inclination to impose a sentence slightly less than what the State was recommending, then without receiving any new facts, imposes a higher sentence than recommended on the date trial was to go forward, reversal and re-sentencing is appropriate.

(ECF No. 7-1, Exhibit 17).

On September 23, 2021, the Ohio Supreme Court accepted jurisdiction over the appeal with respect to Mr. Hill's first proposition of law only. (ECF No. 7-1, Exhibit 19). On December 20, 2022, the Ohio Supreme Court reversed, holding that the trial court abused its discretion by refusing to permit Mr. Hill to enter a plea of no contest based on the trial court's own determination that there were no legitimate grounds for appeal. (ECF No. 7-1, Exhibit 25). The court remanded the case to the trial court to allow Mr. Hill to enter a new plea. *Id*.

**C.  Resentencing and Subsequent Appeal**

On March 7, 2023, Mr. Hill entered a plea of no contest. (ECF No. 7-1. Exhibit 28). The trial court again sentenced Mr. Hill to an aggregate term of 16 to 21 and a half years in prison. *Id*.

On March 27, 2023, Mr. Hill, through counsel, timely filed an appeal to the Fifth

Appellate District. (ECF No. 7-1, Exhibit 29). In his appellate brief, Mr. Hill raised the

following assignment of error:

1. The trial court erred in denying appellant's motions to suppress.

    First Issue: Under Crim.R. 41 and the Sixth Amendment's notice clause, a
    vehicle tracker warrant fails if (a) government fails timely to serve a defendant
    with same and (b) if the confidential informant supporting the warrant is
    unreliable. Here, the warrant suffers from both problems. Must this Court
    reverse?

    Second Issue: Under the Fourth and Fourteenth Amendments, a home search
    warrant is invalid for lack of probable cause, particularly on the word of an
    unreliable informant. Here, the home search warrant suffers from, inter alia, the
    word of an unreliable informant, with no good faith exception, yet the trial Court
    denied Hill's motion to suppress. Must this Court reverse?

    Third Issue: Under the Fifth and Fourteenth Amendments, if a defendant makes
    a statement in response to an interrogation while in custody without receiving
    Miranda warnings, then a trial court should exclude same. Here, the police took
    a statement from Hill while in custody but without Miranda warnings, and the
    Court denied his motion to suppress. Must this Court reverse?

(ECF No. 7-1, Exhibit 32).

On December 4, 2023, the Fifth Appellate District affirmed. (ECF No. 7-1, Exhibit

36). On January 18, 2024, Mr. Hill, through counsel, filed a notice of appeal to the Ohio

Supreme Court. (ECF No. 7-1, Exhibit 38). In his memorandum in support of jurisdiction,

Mr. Hill raised the following propositions of law:

1. If a vehicle tracker warrant fails under Crim.R. 41 and the Sixth Amendment's
   notice clause when (a) the government does not serve the defendant in a timely
   manner and (b) the confidential informant supporting the warrant is unreliable,
   and if both conditions (a and b) are true for a given vehicle tracker warrant, then
   this Court must reverse the decision based on that warrant.

2. If a home search warrant lacks probable cause due to reliance on an unreliable
   informant, and there is no good faith exception, then it is invalid under the Fourth
   and Fourteenth Amendments. In Hill's case, the home search warrant was based
   on the word of an unreliable informant without a good faith exception, and the
   trial court denied Hill's motion to suppress. Therefore, this Court should reverse
   the trial court's decision.

3. If a home search warrant lacks probable cause due to reliance on an unreliable informant, and there is no good faith exception, then it is invalid under the Fourth and Fourteenth Amendments. In Hill's case, the home search warrant was based on the word of an unreliable informant without a good faith exception, and the trial court denied Hill's motion to suppress. Therefore, this Court should reverse the trial court's decision.[2]

(ECF No. 7-1, Exhibit 39). On April 2, 2024, the Ohio Supreme Court declined to

accept jurisdiction over the appeal. (ECF No. 7-1, Exhibit 41).

**D.  Federal Habeas Action**

On April 2, 2025, Mr. Hill, through counsel, filed his 28 U.S.C. § 2254 habeas

petition. (ECF No. 1). Mr. Hill's habeas petition raises three grounds for relief:

1. Appellant asserts that the tracker warrant was not timely served as required by Crim. R. 41(D)(2) and that the confidential informant supporting it was unreliable, thereby undermining the warrant's validity.

2. The search warrant for Hill's residence lacked adequate probable cause because it relied on evidence from controlled buys conducted away from his home and on an uncorroborated confidential informant's testimony that failed to establish a sufficient nexus between his residence and the illicit activity.

3. Hill's un-Mirandized statements, obtained while he was effectively in custody without receiving the requisite Miranda warnings, should have been suppressed as a violation of his Fifth Amendment rights.

*Id*. The Warden filed an answer/return of writ on June 18, 2025. (ECF No. 7). Mr. Hill

filed a traverse on August 16, 2025. (ECF No. 10).

**IV. STANDARDS OF REVIEW AND GOVERNING LAW**

**A.  Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of

habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court

---

[2] Mr. Hill's second and third propositions of law to the Ohio Supreme Court were identical. However, in the body of his argument regarding his third proposition of law, Mr. Hill argued that the police obtained statements he made during the search of his home in violation of his Fifth and Fourteenth Amendment rights. The Warden does not argue that Mr. Hill failed to adequately present his *Miranda* claim to the Ohio Supreme Court.

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Stark County Court of Common Pleas sentenced Mr. Hill, and the Court takes judicial notice that Stark County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Hill's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### C. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court

9

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further."

10

*Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS[3]

### A.  <u>Ground One: Invalid Tracker Warrant</u>

In his first ground for relief, Mr. Hill argues that the warrant the State obtained to place a tracking device on his vehicle was invalid because the police failed to timely serve the warrant on him and because the confidential informant supporting the warrant was unreliable. The Warden responds that Mr. Hill's first ground for relief is not cognizable in habeas. The Warden's argument is well-taken.

Mr. Hill first argues that the tracking device warrant was invalid under Ohio Rule of Criminal Procedure 41(D)(2), which provides that the officer executing the warrant must serve a copy of the warrant on the person tracked within 10 days after use of the device has ended. *See* Ohio R. Crim. P. 41(D)(2). As noted above, however, federal habeas corpus relief is not available for errors of state law. *See Estelle*, 502 U.S. at 67. Rather, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). Thus, to the extent Mr. Hill premises his claim on the State's alleged violation of Rule 41(D)(2), his first ground for relief is not cognizable.[4]

---

[3] The Warden does not argue that Mr. Hill procedurally defaulted on his claims or that he failed to exhaust them. Nor does the Warden argue that the petition is untimely.

[4] The Fifth Appellate District held that the trial court did not err in determining that the warrant was served on Mr. Hill within 10 days as Rule 41(D)(2) requires. (ECF No. 7-1, Exhibit 36, ¶ 16). Even if Mr. Hill's Rule 41(D)(2) argument were cognizable, he has not shown by clear and convincing evidence that the Fifth Appellate District made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Burt*, 571 U.S. at 18; *Wiggins*, 539 U.S. at 528.

Mr. Hill also argues that his Fourth and Fifth Amendment rights were violated because he was not given a meaningful opportunity to challenge the tracking device warrant. In particular, he argues that there were factual disputes regarding whether agents served the warrant on him and that the absence of clear evidence prevented him from disproving the State's assertions. Mr. Hill also argues that the trial court determined probable cause based on an unredacted affidavit that the court reviewed in camera and that Mr. Hill was not permitted to see or contest.

In *Stone v. Powell*, the Supreme Court held that, given the "nature and purpose" of the Fourth Amendment exclusionary rule, habeas review is generally unavailable to petitioners who asset that evidence obtained through an unconstitutional search and seizure was introduced at trial. 428 U.S. 465, 481-82 (1976). Thus, a petitioner may not pursue a Fourth Amendment claim "if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

To determine whether *Powell* bars a petitioner's Fourth Amendment claim, a court conducts a two-step review process. First, the court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Second, the court "must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*.

In *Good v. Berghuis*, the Sixth Circuit held that an "opportunity for full and fair consideration" means "an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that

12

particular claim." 729 F.3d 636, 639 (6th Cir. 2013). "In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*. at 639.

Judged against that standard, Mr. Hill's arguments are unavailing. He does not argue that Ohio's procedures, in the abstract, fail to provide criminal defendants with an opportunity to raise a Fourth Amendment claim, and the Sixth Circuit has held that Ohio's procedures are "clearly adequate." *Riley*, 674 F.2d at 526. Mr. Hill does argue that the trial court frustrated his ability to raise the claim in his particular case. In particular, he argues that there was a live dispute regarding whether agents actually served him with the warrant and that irregularities in the warrant documentation "impaired the adversarial process and undermined meaningful appellate review . . . ." (ECF No. 10, PageID # 646). However, Mr. Hill does not dispute that both the trial court and the appellate court considered his arguments, and he has not shown that either proceeding was a "sham" proceeding. *Good*, 729 F.3d at 639. There is thus "no need" to inquire into the rigors of the procedure that the state courts employed. *Id*.  at 639-40 (holding that *Powell* barred Fourth Amendment Claim where petitioner presented claim to state trial and appellate courts); *Machacek*, 213 F.3d at 952 (holding that petitioner's Fourth Amendment claim was not reviewable where "the record reflects that petitioner was able to present his Fourth Amendment claims to the Michigan courts and that these claims were carefully considered and rejected at the trial level and on appeal").

Mr. Hill also argues that the alleged procedural defects violated his due process rights under the Fifth and Fourteenth Amendments. However, his argument asks the Court to inquire into the rigors of the state court procedures for adjudicating the claim in contravention of *Powell* and *Good*. *See Maddox-El v. McKee*, No. 1:07-cv-11349-BC, 2012 WL 1019166, at

13

*21 (E.D. Mich. Mar. 26, 2012) (petitioner's claim that he was denied due process because prosecution concealed lack of probable cause supporting warrant was not cognizable under *Powell* because petitioner had full and fair opportunity to litigate claim in state court). I therefore recommend that the Court dismiss Mr. Hill's first ground for relief as non-cognizable.

### B.  Ground Two: Invalid Search Warrant for Residence

In his second ground for relief, Mr. Hill argues that the search warrant for his residence lacked probable cause because it relied on evidence from controlled buys that did not occur at his home and on the uncorroborated testimony of a confidential informant that failed to establish a sufficient nexus between his home and the alleged illicit activity.

As with his first round for relief, Mr. Hill's second ground for relief is not cognizable. He again argues that his Fourth Amendment rights were violated as a result of an invalid search. However, Mr. Hill has not shown that he was denied a full and fair opportunity to present his claim to the state courts either in theory or in practice. I therefore recommend that the Court dismiss Mr. Hill's second ground for relief as not cognizable under *Powell*.

### C.  Ground Three: Fifth Amendment

In his third and final ground for relief, Mr. Hill asserts that his Fifth Amendment rights were violated because agents subjected him to custodial interrogation without first warning him of his rights under the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1996).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. To effectuate that right, the Supreme Court held in *Miranda* that, as an "absolute prerequisite to interrogation," an individual must be clearly informed of his right to counsel and his right to remain silent. 384

U.S. at 471. "Thus, *Miranda* 'requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued prior to questioning whenever a suspect is (1) interrogated (2) while in custody." *Mason v. Brunsman*, 483 F. App'x 122, 126 (6th Cir. 2012) (emphasis omitted) (quoting *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990)). If a suspect is subject to custodial interrogation without receiving a *Miranda* warning, any statements the suspect made are not subsequently admissible against them. *Miranda*, 384 U.S. at 476.

Custodial interrogation occurs when the suspect is subject to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Moranda*, 384 U.S. at 444. Custody is "a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). To determine whether a defendant was in custody, a court must "ascertain whether, in light of the 'objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id*. at 509 (quoting *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) (per curiam); *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). In making that determination, relevant factors include: (1) the location of questioning; (2) the duration of questioning; (3) statements made during the interview; (4) whether the suspect was physically restrained; and (5) whether the suspect was released at the end of questioning. *Id*.

Mr. Hill argues that his Fifth Amendment rights were violated when officers obtained several statements from him during the search of his home without first reading him a *Miranda* warning. In those statements, Mr. Hill asked if officers were looking for "dog food," a slang term for heroin, and told them where they could find the "dog food." (ECF No. 7-1,

Exhibit 36, ¶ 7). Mr. Hill also informed officers that he had a rifle under the bed. *Id*.

In response, the Warden argues both that Mr. Hill was not in custody and that the police did not interrogate him because he provided his statements voluntarily. The Warden first argues that the Fifth Appellate District correctly held that Mr. Hill was not in custody. However, that is not an accurate summary of the Fifth Appellate District's decision. Rather than holding that Mr. Hill was not in custody, the Fifth Appellate District assumed for the sake of argument that he was. *Id*. at ¶ 30. The court also noted that, while "not determinative," one of the agents testified that she believed Mr. Hill was in custody because police had handcuffed him, placed him in a cruiser, and moved him from one location to another before Mr. Hill made the statements at issue. *Id*. at ¶ 30 n. 1.

Like the Fifth Appellate District, I need not determine whether Mr. Hill was in custody at the time he made the statements because his claim can be disposed of on the issue of whether he was subject to interrogation. The Fifth Appellate District addressed that question on the merits, holding that *Miranda* did not apply because Mr. Hill made his statements voluntarily and without any questioning from the police:

> In the instant case, there is no evidence questioning was initiated by law enforcement. Even assuming arguendo Appellant was "in custody" when seated at his kitchen table across from Agent Blanc, we find his statements concerning the location of heroin and a rifle in the house were not the product of interrogation. Agent Blanc testified he and Agent Mike Volpe were seated at the kitchen table with Appellant. Agent Blanc testified he was packaging inventory as it was brought to him. Maybe two to three minutes after Appellant was brought to the table, Appellant made the statements. The statements were not in response to any questions posed by officers in the room, but were spontaneously offered by Appellant. No further questioning occurred as a follow up to Appellant's statements. Agent Blanc informed Agent Hmiel what Appellant said, and she removed Appellant from the room. Based on the testimony from the first suppression hearing, we find the trial court did not err in failing to suppress the statements made by Appellant on the basis he was not read his Miranda rights. We find Miranda warnings were not required in the instant case, because Appellant was not subject to interrogation by police officers.

(ECF No. 7-1, Exhibit 36, ¶ 30) (footnote omitted).

16

The Fifth Appellate District's holding that Mr. Hill was not subject to interrogation was not contrary to or an unreasonable application of clearly established law. The Supreme Court has held that "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Thus, the Court held in *Innis* that *Miranda* applies "whenever a person in custody is subject to either express questioning or its functional equivalent." *Id*. at 300-01. However, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*. at 301-02. Moreover, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by" *Miranda*. *Miranda*, 384 U.S. at 478.

It is true that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. Here, however, there is no indication that the police said anything or took any actions that they should have known were reasonably likely to elicit an incriminating response. Instead, the Fifth Appellate District found that agents were simply sitting at a table with Mr. Hill packaging inventory when he volunteered the statements. (ECF No. 7-1, Exhibit 36, ¶ 30).

Mr. Hill has not cited any clearly established law for the proposition that sitting with a suspect and packaging inventory is reasonably likely to elicit an incriminating response. To the contrary, the Supreme Court and the Sixth Circuit have held that a suspect was not subject

to interrogation even where the police engaged in actions more likely to elicit a statement from the suspect than anything the police did here. *See Innis*, 446 U.S. at 302-03 (holding that officers did not interrogate suspect by engaging in brief conversation in front of him); *Hart v. Steward*, 623 F. App'x 739, 745-46 (6th Cir. 2015) (holding that suspect was not subject to interrogation where suspect made statement as "a voluntary response to an officer's accurate declaratory statement"); *Hoffner v. Bradshaw*, 622 F.3d 487, 512 (6th Cir. 2010) (holding that police's basic investigatory questions during execution of search warrant did not constitute interrogation). And, because Mr. Hill made his statements to the police voluntarily and without any prompting, *Miranda* does not apply.

Mr. Hill argues that the Fifth Appellate District's finding that he volunteered the statements at issue is "unreliable and incomplete" because there was no audio or body camera recording of the statements and because the slang term "dog food" is unusual. (ECF No. 10, PageID # 656), Mr. Hill also argues that the "safer and legally correct" reading of the facts is that he made the statements following the functional equivalent of interrogation. *Id*. However, Mr. Hill has not shown by clear and convincing evidence that the state courts made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and thus has not rebutted the Fifth Appellate District's factual findings. *See Burt*, 571 U.S. at 18; *Wiggins*, 539 U.S. at 528. Accordingly, the Fifth Appellate District's holding that Mr. Hill was not subject to interrogation was not contrary to or an unreasonable application of clearly established law, and I recommend that the Court deny Mr. Hill's third ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not

appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Hill has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII.  RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Hill's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability. Finally, I recommend that the Court substitute Warden George A. Frederick for Judge Taryn L. Heath as the respondent in this proceeding.

  Dated:  January 5, 2026                      *s*/*Jennifer Dowdell Armstrong*
                                              Jennifer Dowdell Armstrong
                                              U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may

consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).